USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/15/09_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MAUREEN WRIGHT-JACKSON,

               Plaintiff,

    - against -

HIP HEALTH PLAN,

               Defendants.
------------------------------------x

07 Civ. 1819 (DFE)

(This is not an
an ECF case.)

MEMORANDUM AND ORDER

    DOUGLAS F. EATON, United States Magistrate Judge.

    In this job discrimination case, I am ruling on numerous discovery issues raised by the plaintiff (who has no attorney) and by the defendant ("HIP," which is represented by Seema Misra, Esq.).  In making my rulings, I have considered the following documents:

    From Plaintiff

    1.  Plaintiff's letter motion ("Pl. 1") dated August 4, 2008 but submitted to me October 16, 2008. It contains 31 pages plus Exhibits 1, 2, 3, 4, 5, 5a.

    2.  Plaintiff's 10/17/08 e-mail to my law clerk. It contains:

        (a) 2 e-mails from Ms. Misra to Plaintiff dated October 15, 2008, one at 1:37 p.m. and one at 2:12 p.m. ("Pl. 2(a)").

        (b) Plaintiff's 10/17/08 letter to me "in response to the attached e-mail" ("Pl. 2(b)").

    3.  Plaintiff's letter to me ("Pl. 3") dated October 24, 2008.  It responds to HIP's 10/17/08 motion to compel.  It contains 3 pages plus Exhibits (B1, B2, D1, D2, D3 and D4).

    4.  Plaintiff's 4-page letter to me ("Pl. 4") dated October 29, 2008.  It contains 9 pages plus Exhibits A1 through A9.

USDC SDNY
DATE SCANNED_4/15/09_

From Defendant HIP

1.   Defendant's letter motion ("Def. 1") dated October 17, 2008 requesting an order to compel Plaintiff to complete outstanding discovery by a date certain.   It contains 7 pages plus Exhibits 1 through 10.

2A.   Amended version of Defendant's 10/24/08 letter to me ("Def. 2A").   It responds to Pl. 1 and Pl. 2, and it annexes Exhibits 1 through 30.

3.   Defendant's letter to me ("Def. 3") dated October 29, 2008.   It annexes Exhibits 1 through 9.

### **PLAINTIFF'S MOTION TO COMPEL MORE DISCOVERY (Pl. 1)**

Plaintiff made her document requests in five installments: April 24, 2008 (Pl. 1, Exh. 1), June 1, 2008 (Pl. 1, Exh. 2), June 17, 2008 (Pl. 1, Exh. 3), "July 23, 2008 12:02 a.m." (Pl. 1, and Exh. 4) and July 24, 2008 (Pl. 1, Exh. 5).[1]

For the most part, Plaintiff alleges that she thinks or knows that certain documents exist, or did exist, or should exist, and yet they were not produced in response to her requests.   For the most part, HIP alleges that to the extent HIP had any documents responsive to plaintiff's requests, they have been produced. [2]  (See Def. 2A.)

Plaintiff's Document Request no. 1 (Pl. 1, Exh. 1)

Among the "documents not produced" in response to the April

---

[1] On July 17, 2008, plaintiff deposed several HIP employees.   She indicates that her fourth and fifth requests were prompted by testimony at those depositions. (Pl. 1, p. 9.)

[2] HIP does make relevance objections to a few requests; I discuss them in the body of this memorandum.

24, 2008 request, plaintiff mentions (Pl. 1, pp. 1-4):

> documents from the "Employee's Health Department" regarding "incidents" with Mr. Kennedy and Mr. Cronin in September 2001 and December 2002 and "ongoing occurrences with Ms. Hagen during May 27, 2004 through December 6, 2004;"

> documents relating to plaintiff's "educational and continuous training accomplishment through the Learning and Development department of 'HIP University';"

> documents relating to her requests to transfer jobs within HIP during 2001-2004, and relating to the transition period after her actual transfer from Mr. Kennedy's department to Ms. Hagen's, including emails from December 2002 to December 6, 2004;

> "strings of central email communications" with nine named individuals;

> a "telecommunications log on plaintiff's account;" and

> "All in-house Voice-messages sent to and from Plaintiff's telecommunications Account for period 12/1/02-12/6/04."

In her October 24, 2008 response (Def. 2A, pp. 1-11), Ms. Misra details the efforts made and the documents produced by HIP in response to Plaintiff's first document request, and she provides a 5-page chart titled "Description of HIP's Document Production" (Ex. 16). In addition, she provides two Declarations of Diane McGuire, Assistant Director of Employee Relations in the Human Resources Department of HIP (Exhs. 20 and 23) describing document searches made or supervised by McGuire.

I turn first to Plaintiff's demand for copies of all her applications to transfer to other jobs within HIP, particularly

3

during 2000-2002.  Ms. Misra states as follows at Def. 2A, p. 7:

> Plaintiff incorrectly contends that
> there is a discovery dispute regarding
> documents regarding her job applications.
> HIP does not dispute the relevance of this
> request and, has produced several responsive
> documents.  These documents relate to
> Plaintiff's application to and transfer to
> the GAP department in April 2003, such as
> staff requisition paper work and related
> email communications.  Ex. 22.  HIP also has
> records that Plaintiff applied for four
> positions between 2000 and 2002, before being
> transferred to the GAP department.  Ex.23 ¶3.
> HIP has not been able to locate Plaintiff's
> applications for those positions.

Plaintiff states "this is just a fraction of my total

applications for 2000-2002; I applied left right and center, both

internally and externally."  She gives a few specific examples.

It is possible that she may be correct that she applied for more

than four positions prior to April 2003.  But HIP did not receive

the Summons and Complaint until June 2007, and did not receive

any document request until April 2008.  Therefore, I do not

discredit Ms. Misra's statement that HIP produced whatever

documents it still possessed.

In her October 29, 2008 letter, Pl. 4, pp. 3-4, Plaintiff

states:

> All information I sought is available.  The
> point is they were available up until my
> termination.  HIP knew from my dismissal that
> litigation was imminent for I did not sign
> the separation document, I told them of the
> litigation, and two days after they were
> served with a summons from the Commissioner
> of Human Rights.  That was enough to alert

> them of this day. Therefore, they should
> protect all my documents if they wanted to
> act in good faith.

But her 12/8/04 Charge of Discrimination did not give HIP fair

notice that she wanted HIP to retain all documents from the

period 2000 to 2002. It merely complained about incidents on

April 26, May 27, November 1, and December 6, 2004.

Def. 2A, Exh. 24 is Declaration of Bernadine Lawson, a

Forensic Investigator in the Information Security Department at

HIP, in which Lawson describes her search for e-mails and voice

mails and explains the HIP policies and procedures regarding

retention of such information. [3]  She reports that many e-mails

or voice mails that may have existed from 2002-2004 are long gone

(with the exception of some e-mails retained by people who are

still employed at HIP).

Ms. Misra states, at Def. 2A, p. 8:

> Even though emails from Plaintiff's own
> account could not be retrieved, HIP searched
> for e-mails that referenced Plaintiff in any
> manner (either in the text of the message or
> as a sender or recipient) from all of the
> accounts of the individuals referenced in the
> Complaint....

At Pl. 1, pp. 25-26, Plaintiff criticizes this approach as

insufficient:

---

[3] Plaintiff provided an affidavit from Christopher S. Cassar, a self-described "certified computer forensic specialist." However, his affidavit speaks in general terms about technology and business practices involving retention of electronic data. He does not specifically criticize HIP's procedure and policies. (See Pl. 1, Exh. 1g; see also Def. 2A, Exh. 26.)

> According to defendant, they chose the
> literal search approach where they select
> what the system should present. Even, so
> this doesn't satisfy the plaintiff's request,
> for the criteria used are partial. For
> example, defendant unilaterally determined
> their selections. In terms of names, Rob
> Cronin, Larry Minard, Colette Choute, Jasmine
> Thomas, Deborah Thompson, Wavel Bailey, and
> Viola Sykes are omitted from defendant's
> criteria list. That's not all, for those
> individuals whom defendant selected, half or
> all their information was omitted. For
> example, nothing was produced for John
> Kennedy even though John Kennedy testified
> and negated plaintiff's evaluation claiming
> that plaintiff resorted to email to avoid
> verbal communication with both Kennedy and
> Cronin. At least, where are those e-mails?
> Concerning the other individuals involved, as
> much as half of their emails are omitted.
> Ironically, the emails omitted are the core
> main material documents that will
> substantially prove plaintiff's claim without
> a doubt; thus reduce witness list and
> ultimately save time.

Certainly HIP's choice to search for e-mails in "user accounts of

the supervisors that Plaintiff's Complaint identified as

individuals who participated in discriminatory treatment and the

HR individuals who received her complaints" (Def. 2A, p.9) was

rational and reasonable. As for Rob Cronin, Lawson's Declaration

represents that Cronin's account had been eliminated after he

departed from HIP in 2006.  (Def. 2A, Exh. 24 ¶7.)

As to the other individuals, Ms. Misra argues:

> This Court should reject Plaintiff's
> suggestion that HIP should have searched for
> email from individuals who she interacted
> with but who she has never alleged
> participated in discriminatory treatment of

6

her -- such as, Jasmin Thomas, Deborah
Thompson, Wavel Bailey and Viola Sykes.

Plaintiff says, at Pl. 1, p. 3:

This email request is extremely paramount.
These e-mails span the four corners of my
claim.  For example, these emails detailed
from day one my daily activities in Ms.
Hagen's department in a step-by-step fashion
from assignment projects to delivery.  In
cases where I encountered barriers, that are
imminent in project delay etc., the email
system was fully utilized as a medium to
broadcast this information to the relevant
personnel and subsequent meetings were held
in this regards.  These broadcasts generally
highlight authentic leads showing the type of
issue, elements that are the driving force
behind problems, request for
reprioritization, step-by-step action to
overcome obstacles.  Only to find that these
already settled obstacles where used to
negate my evaluations and ultimately
terminated my services in the name of
performance.

These are generalities.  Plaintiff doesn't explain how or why the

emails of these additional persons would be relevant to her

claims (or to HIP's defenses).  For example, she does not say

that any of these persons praised her, or criticized her

unjustly.  Absent a clear statement by Plaintiff justifying a

search of the accounts of individuals other than those already

produced -- that is, explaining why such a search would be

"reasonably calculated to lead to the discovery of admissible

evidence," Fed. R. Civ. Pr. 26(b)(1), I decline to require HIP to

conduct that additional search.

The bottom line, as stated by Ms. Misra, is that "all of the

7

documents Plaintiff's Motion seeks from her initial discovery demand have (i) been produced, (ii) do not exist, or (iii) are in the possession of third parties, whom Plaintiff knows must be subpoenaed." (Def. 2A, p.3.) At p. 20 of her motion, Plaintiff states:

> This is not a fishing expedition for plaintiff; this is a serious request for material documents that exist and are of vital importance to the case. Plaintiff physically came in contact with these documents where in [a] majority of times signed to most of them. [sic] This action appears to be [and?] is downright "hiding the ball."

I have no reason to doubt Plaintiff when she states that she saw or signed various documents, but that does not mean they still exist. Plaintiff has given no sound reason why I should discredit the declarations of McGuire and Lawson, or Ms. Misra's descriptions of documents that have been produced, or HIP's explanation of why certain documents do not exist (including documents that may have existed at some point but are not in existence now). Accordingly, I deny Plaintiff's motion to order further production in response to her Document Request no. 1. See, *Jackson v. Edwards*, 2000 WL 782947 (S.D.N.Y. June 16, 2000); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n. 7 (S.D.N.Y. 1992)("In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion.")

Plaintiff's Document Request no. 2 (Pl. 1, Exh. 2)

Seven pages long in its original form, this request was definitely overbroad and burdensome. It sought "all" complaints against HIP, plus personnel records for several individuals. Plaintiff states:

> For this particular request, both parties went through it at length. Plaintiff dissected each item to the lowest element. Plaintiff also narrowed the scope and requested all employment related cases against HIP during plaintiff's tenure. Defendant again selected a few cases and again omitted the key ones. Once more plaintiff reminded defendant's counsel of other existing employment cases that are omitted. Instead of ensuring the production of these documents, defendant's counsel emphatically added that only those received are related to plaintiff's case. In response, plaintiff identified employment-related cases by listing the guidelines set forth by the department of labor, but defendant's counsel continued refusal of production of those material documents.
>
> During this conference, plaintiff also specifically requested all complaints against Ms. Hagen and Mr. Kennedy which should include both union and management issues. Again defendant's counsel claimed that nothing existed.

(Pl. 1, p. 28, emphasis added.)  As to the last sentence, Ms. Misra represents that HIP did produce documents involving "employment related complaints against Mr. Kennedy and Ms. Hagen." (Def. 2A, p. 11 and Exh. 23.)  Ms. Misra adds:

> HIP has produced ... charges of discrimination filed with the Equal Employment Opportunity Commission ("EEOC") or

9

> New York State Division of Human Rights
> ("NYSDHR"), and complaints against HIP filed
> in state or federal court ..., from 1997
> through the present, relating to a Health
> Insurance Plan of Greater New York employee's
> allegations of race, national origin, and
> disability discrimination....
>
> Ex. 27 & 16 at 1.13.  HIP should not be
> required [to produce] any other information,
> because other types of complaints do not
> relate to Plaintiff's claims of
> discriminatory treatment based on race,
> national origin, and disability.

(Def. 2A, p. 12.)  Plaintiff has not responded to the substance

of this HIP argument.  For example, plaintiff does not claim age

discrimination; she does not explain the relevance of complaints

about age discrimination, nor "the guidelines set forth by the

department of labor."  HIP has stated that it produced 11 years

worth of complaints involving the same types of discrimination

that plaintiff alleges.  I find that HIP provided an adequate

response to Document Request no. 2.

Plaintiff's Document Request no. 3 (Pl. 1, Exh. 3)

At Pl. 1, p. 5, Plaintiff complains that HIP has not

produced documents in response to the following request:

> 1. Complete Evaluations for Shirley Atwood,
> Patricia Taylor, David Gates, Beatrice Reid, Rob
> Cronin, Bridget Harvey *2001 and 2002*
>
> 2.  Complete evaluations for Pamela Hinds *2003
> and 2004*
>
> 3. Complete evaluations for (**All** Rob Cronin's
> staff) *2002, 2003 & 2004*.

Plaintiff states (Pl. 1, p. 5):

> Plaintiff's case is based on bias and from my
> global understanding, my evaluation for the
> period 2001-2004 was extremely unique and
> reflected biases; therefore I seek these
> documents to support my claim with a
> comparison of evaluations that were given by
> these managers in the same period.

Ms. Misra responds as follows (Def. 2A, pp. 12-13):

> ... HIP has produced Mr. Cronin's
> evaluations.... HIP disputes the relevance of
> Ms. Hinds' evaluations, because she was a
> union employee, and thus, not a similarly
> situated individual.  In any case, HIP cannot
> produce any evaluations relating to Ms. Hinds
> because union employees did not receive
> evaluations....   Likewise, there is no
> dispute regarding the evaluations for "Rob
> Cronin's Staff" ... [because] the only
> individual who reported to Mr. Cronin at the
> time Plaintiff was employed in that
> department was the Plaintiff.  Thus, there
> are no similarly situated employees whose
> evaluations are relevant to Plaintiff's
> claims.

> This Court should also deny Plaintiff's
> motion to compel "complete evaluations for"
> Shirley Atwood, Patricia Taylor, David Gates,
> Beatrice Reid and Bridget Harvey from 2001 &
> 2002.  HIP understands that Plaintiff seeks
> to establish that these evaluations show that
> Mr. Kennedy's evaluations of these
> individuals (who are also Black) reflected
> race/color discrimination.  HIP objected to
> this on various grounds including
> relevance....  These evaluations will not
> establish bias because "negative evaluations,
> standing alone without any accompanying
> adverse results, are not cognizable."
> Bennett v. Watson Wyatt & Co., 136 F.Supp.2d
> 236, 247 (S.D.N.Y. 2001).

> ... The five individuals Plaintiff
> identifies -- Atwood, Taylor, Gates, Reid and
> Harvey -- cannot be likened to her; none of
> them reported to Cronin....

Plaintiff replies (Pl. 1, p. 30):

> Mr. Kennedy Mr. Cronin, and Ms. Hagen's
> retaliation practices revealed drastically in
> the evaluation of staff who reported their
> discriminatory actions and that's what I want
> to prove.

This is an unclear statement.  One possible meaning would be that

she thinks the evaluations of those people would evidence

racially discriminatory conduct on the part of Kennedy, Cronin

and Hagen.  Or, if the evaluations of these people were to be

fair and positive, she may seek to contrast them to her own,

which she considers unfairly negative.  But an employee who is

not similarly situated to plaintiff would not be a relevant

"comparator," and information regarding that employee's

performance would rarely be meaningful.  On the other hand, if

the import of a requested evaluation had to do with its writer,

then it might be relevant to show an attitude or a pattern or

lack of a pattern.

Ms. Misra states (Def. 2A, pp. 13-14):

> Alternatively it may be that Plaintiff is
> arguing that Mr. Kennedy, Mr. Cronin, and Ms.
> Hagen retaliated against her by giving her a
> negative evaluation but they did not
> retaliate against other African-American
> staff who did not report them for
> discriminatory actions.  However, that
> argument relies on a false premise -- that
> the other individuals she identifies (Atwood,
> Taylor, Gates, Reid, and Harvey) believed
> that Mr. Kennedy, Mr. Cronin, and Ms. Hagen
> discriminated against them.  Plaintiff has
> produced absolutely no documentary evidence
> to suggest that any of the individuals

12

> believed that they received discriminatory
> treatment. None of these individuals have
> been identified as Plaintiff's trial
> witnesses. The evaluations of these non-
> parties are not relevant to Plaintiff's
> retaliation claim, and the Motion should be
> denied.

Regarding personnel records of third parties, courts have been
careful to balance the privacy interests of the non-party
employee against the party's need for information. See, e.g.,
*Duck v. Port Jefferson School District*, 2008 WL 2079916 at \*\*3-4
(E.D.N.Y. May 14, 2008); *Williams v. The Art Institute of
Atlanta*, 2006 WL 3694649, \*10-11 (N.D.Ga. 2006); *Cason v.
Builders Firstsource-Southeast Group, Inc.*, 159 F.Supp.2d 242,
248-49 (W.D.N.C. 2001); *Obiajulu v. City of Rochester Department
of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996).

I find that HIP provided an adequate response to Document
Request no. 3.

> Plaintiff's Document Request no. 4. (Pl. 1, Exh. 4 and
> Exh. 4a)

This request extends four pages and appears to be very broad
and very burdensome. HIP objected to this document request on
several grounds. (See Pl.1, Exh. 4e). First, HIP objected
because this request, although dated July 23, 2008, was not
served by mail until September 18, 2008, two months after the
then-existing discovery deadline of July 24, 2008. Plaintiff did
e-mail it to Ms. Misra on July 24 and/or 25 (See Def. 2A, Exh.
28), but Ms. Misra writes (Def. 2A, p. 14):

13

> HIP made very clear that, while email was
> sufficient [for] routine correspondence, HIP
> expected Plaintiff to serve pleadings and
> discovery [by mail or by hand delivery].
> This was due in part to the fact that
> Plaintiff repeatedly emailed attachments,
> which were incomplete (but due to the
> incomprehensible nature of Plaintiff's
> attachments, HIP could not always determine
> when an attachment was incomplete).

Under the Federal Rules, a party is entitled to effect
service by electronic means only if there has been written
consent by the party to be served. Fed. R. Civ. Pr. Rule 5. [4]
Ms. Misra states that HIP did not consent to be served
electronically. Plaintiff does not allege that HIP or HIP's

---

[4] Rule 5. Serving and Filing Pleadings and Other Papers

(a) Service: When Required.

(1) In General. Unless these rules provide
otherwise, each of the following papers must be served
on every party:
*       *       *
(C) a discovery paper required to be
served on a party, unless the court orders otherwise;
(D) a written motion, except one that may
be heard ex parte; ....
*       *       *

(b) Service: How Made.
*       *       *
(2) Service in General. A paper is served under this
rule by:
*       *       *
(C) mailing it to the person's last known
address -- in which event service is complete upon
mailing;
*       *       *
(E) sending it by electronic means if the
person consented in writing -- in which event service
is complete upon transmission, but is not effective if
the serving party learns that it did not reach the
person to be served; or
(F) delivering it by any other means that
the person consented to in writing ....

14

attorneys consented in writing. The Advisory Committees Notes
Comments to the 2001 Amendments state:

> Subparagraph D [now E] of Rule 5(b)(2)is new.
> It authorizes service by electronic means or
> any other means, but only if consent is
> obtained from the person served. The consent
> must be express, and cannot be implied from
> conduct.

Accordingly, since Plaintiff has not shown that HIP expressly
consented to receive service of discovery requests by email,
HIP's objection is valid.

In any event, I do not see that this prejudices Plaintiff,
since for the most part HIP's substantive objections would have
merit, even if the Request had been timely served by mail. (See
Def. 2A, pp. 14-19.)

Ms. Misra states that the Documents requested in Items
1,⁵ 2, 3, 4, 5, 6 and 9 of Plaintiff's Document Request no. 4
have already been produced or do not exist.

Item 7 requests:

**"All** Procedure documentations [for 27 listed
subcategories of] reports/projects completed
in the GAP Dept. During 4/1/03-12/6/04.
**Please Note**: All documents should be produced
even if the project no longer active."

_____

⁵ Item 1 requests "June Hutchinson's response to Ali Hagen's email of
10/14/04." Ms. Misra reports, at Def. 2A, p. 15, that there was no response
by Hutchinson to this e-mail from Hagen. Plaintiff either ignores or refuses
to accept this fact. She states, at Pl. 1, p. 11: "Ms. Hutchinson's response
that would include an attachment of my termination letter that they developed
later is a very important document to my case." (Emphasis added.) The word
"would" does not establish that there was a response, nor that it still
existed in HIP's records when Plaintiff served her Rule 34 request.

15

HIP states it "does not understand this request," that it "is incomprehensible" and that Plaintiff "also fails to establish relevance." I agree. Plaintiff states (Pl. 1, p. 14): "[T]he list of specific projects included is projects completed by plaintiff." As for searching for documents concerning 27 projects, I find that the burden and expense of the proposed discovery outweighs its likely benefit.

On the other hand, Plaintiff also writes, "A[s] [a] matter of fact, one of these procedure documentations, 'FHP/Medicaid Enrollment Statistics,' was the basis on which plaintiff was given formal warning 5/27/04 and was also included in plaintiff's termination." (Pl. 1, p. 14.) It sounds as though Plaintiff already has a copy of this document. It is my understanding that HIP produced her personnel file and documents relating to her termination. **If this "FHP/Medicaid Enrollment Statistics" document does exist, and it has not already been produced, then I direct HIP to produce it as soon as possible.**

Item 8 requests:

"produce ... via **the Computer Technology Department**"
a. All emails between Plaintiff [and eight named individuals, Hagen, Minard, Hutchinson, Choute, Thomas, Thompson, Hinds and Bailey]".

In substance this is a repeat of some of Document Request no. 1. However, in Hagen's case, Plaintiff has added "unread emails from Plaintiff to Allie Hagen". Ms. Misra points out that

16

the emails relating to Hagen and Hutchinson have already been produced. She argues that Minard, Choute, Thomas, Thompson, Hinds and Bailey are irrelevant because they have not been alleged to have been involved with any discriminatory conduct. "If none of these individuals participated in the allegedly discriminatory treatment Plaintiff received, then ordinary day-to-day communications between Plaintiff and those individuals has absolutely no relevance to her claims." (Def. 2A, pp. 17.) Plaintiff merely states:

> This request is completely relevant. Every email sought, every person involved, and the time period played a vital role in the proof of my claim.

That statement is so general and conclusory that it conveys no information, and it does nothing to rebut Ms. Misra's argument.

Item 10 requests:

> "All HR documents regarding Assistant Director's Position for the GAP department during October 2003 to December 31, 2003."

Ms. Misra contends that this information would be irrelevant because there is no record that Plaintiff applied for this position. (Def. 2A at 18.) Plaintiff argues (Pl. 1, p. 15):

> This request is completely relevant to plaintiff's case. According to Ms. Hagen's testimony Ms. Hutchinson applied for the posted position via HR. . . Of course plaintiff did not apply for such position for she was not privy to this posting information. Thus, it becomes relevant to this case that intends to highlight all biases.

17

I do not understand what Plaintiff means when she alleges that
she "was not privy to the posting information." **I direct the
parties to submit a joint letter to me as soon as possible,
devoted solely to Items 10 and 11 of Plaintiff's Document Request
no. 4.**

Item 11 rquests:

"All HR documents regarding Systems
Administrator Manager's Position for the MP
System in Marketing Department on or about
January 2003 to February 28, 2003."

Ms. Misra repeats the same argument she made for Item 10.

Plaintiff writes (Pl. 1, p. 15):

Your Honor this statement from defendant is
extremely **disingenuous** and this kind of
posture that defendant takes clearly
punctuates why I am in court today.
Plaintiff genuinely applied for this position
and was also interviewed by both HR and Mr.
Kennedy.  This is the position that was
initially signed off for plaintiff and was
tweaked to promote 2 Caucasians.  When the
prior staff could not have handled the task,
it was posted.  And at that time I applied.
Based on prior investigation on or about
February 2003, it was revealed that only Kim
and plaintiff applied for the position with
Kim getting the edge.  Therefore there is no
confidentiality violation associated with the
production of this request.

**I direct HIP to respond in the single joint letter to be devoted
to Items 10 and 11.**

Item 12 requests:

"A copy of the first report on **Age 65 and up**
that was generated by June Hutchinson and was

18

> emailed/delivered to Wanda Wareham and
> Plaintiff on or about January 2004 - April
> 2004"
>
> Item 13 requests:
> "A copy of the second report on **Age 65 and up**
> that was sent from June Hutchinson to Wanda
> Wareham on or about February 2004-April
> 2004."

Plaintiff states that "this is one of the reports in question

that plaintiff completed," and that to "redact the columns with

sensitive data .. is fine with me, for I don't need sensitive

data to conduct my analysis."  Ms. Misra objects (Def. 2, p. 18):

> HIP should not be compelled to produce this
> request -- which is vague, ambiguous,
> irrelevant and burdensome.  This request is
> vague and ambiguous because Plaintiff
> identifies "first report" and a "second
> report" but then clarifies only that these
> documents were delivered by Ms. Hutchinson
> some time during a 3-month time period from 4
> years ago.  Assuming the report was delivered
> by hand, Ms. Hutchinson did not keep a copy
> of every such report that was delivered 4
> years ago, and the particular versions
> Plaintiff is referencing are
> incomprehensible.  Assuming Plaintiff is
> seeking a document that was sent by email --
> HIP has already produced every retrievable e-
> mail Hutchinson sent to Plaintiff.  Lawson
> Decl., Ex. 24 at ¶¶6-7.  Thus, Plaintiff
> would already have the documents.

Plaintiff merely says (Pl. 1, p. 16):

> This is another request that is completely
> relevant to plaintiff's case.  This was one
> of the reports in question that plaintiff
> completed.

In connection with several of the items in this Fourth

Request, plaintiff asks for a "screen shot" of the document (and

also for screen shots of some documents already received by her
in HIP's prior production); she gives an example of what she
means by "screen shot" at Pl. 1, Exh. 4a. She states (Pl. 1, p.
11):

> As outline[d] below general properties are
> used to provide information of a
> document/file.  Therefore plaintiff requested
> this to ensure integrity of shared documents.
> There is absolutely no burden in
> accomplishing this task.  It is easy as 1-2-
> 3.

She then gives instructions that purport to explain how to pull
up a screen shot. (Pl. 1, p. 12.)  I disagree with her that it
would not be burdensome to obtain (and presumably print) a screen
shot for every document produced.  Even if the steps to create a
single screen shot are simple and quick, doing so for many
screens and e-mails would be time consuming.  More importantly, I
do not see how the type of information given in her sample screen
shot would be at all useful.  I do not comprehend what she means
by "ensure the integrity of shared documents."  I decline to
order HIP to accede to these requests.

> ### Plaintiff's Document Request no. 5 (Pl. 1, Exh. 5)
>
> Items 1 and 2 - "All report/printout
> from the Computer Technology Department that
> states the **time I Log-in and Log-out** in my
> computer/profile during the period **January 1,
> 2004 to May 27, 2004** [and for] **November 21,
> 2004, November 28, 2004 and December 5,
> 2004**."

Plaintiff states (Pl. 1, p. 17) that this request is

20

> completely relevant to plaintiff's case for
> it relates to Ms. Hagen's defense that
> plaintiff operated on a agreed schedule (more
> or less a flex schedule where "plaintiff goes
> and comes as she please"). This log in and
> log out printout will clearly prove
> plaintiff's schedule.

Ms. Misra says that this information is not available (see Lawson

Decl., Exh. 24). In any event, I find that the burden or expense

of the proposed discovery outweighs its likely benefit.

Item 3 requests:

> Information on projects that John Kennedy &
> Larry Minard worked together on during the
> period **April 1, 2003 to May 27,**
> **2004**...[including] all **emails, meeting**
> **notes**...and minutes... status ..., everyone
> else involved if applicable

(Pl. 1, p. 9.) At Def. 2A, pp. 19-20, Ms. Misra objects that

this is burdensome and "hardly relevant," and she adds:

> Plaintiff's request appears to arise out of
> Mr. Kennedy's deposition testimony that he
> visited Mr. Minard to discuss projects:

> > Q. Okay, sir. I'll ask you some
> > more questions. While I was in the
> > GAP department at 34th Street, have
> > you ever happened to be in Mr.
> > Minard's office, Larry Minard?

> > A. I routinely go to Larry
> > Minard's office, regularly,
> > probably daily, to discuss issues
> > related to [t]he products which I
> > manage with him since he's the
> > product manager for that product.

Plaintiff asserts, at Pl. 1, p. 17:

> This request is certainly relevant to
> Plaintiff's case. It addresses Mr. Kennedy's

21

> frequent social visits to plaintiff's new
> department with Mr. Minard and Ms. Hagen
> where Mr. Kennedy openly conducted
> derogatory, condescending, and discriminatory
> conversations about plaintiff; then claimed
> these visits were with regards to their
> collaborative efforts with particular
> projects.

Pursuant to Rule 26(b)(2)(C)(iii), I find that "the burden or expense of the proposed discovery outweighs its likely benefit." Rounding up all available documents about projects that those two men worked on during a 14-month period will not tend to prove or disprove the allegation that they spent time in oral conversations about Plaintiff.

## HIP'S MOTION TO COMPEL MORE DISCOVERY (Def. 1)

By letter dated October 17, 2008, Ms. Misra requests "an Order compelling Plaintiff to complete outstanding discovery by responding to HIP's document requests and Interrogatories by a date certain." She also asks me to direct Plaintiff to sign and submit errata of her deposition transcript.

In response, Plaintiff submitted a 3-page letter with four exhibits (Pl. 3). She complains about HIP's conduct, but she does not deny that she has not completely responded to all HIP's document requests and interrogatories. Regarding her deposition transcript, she seems to be saying that she cannot review and sign the July 10, 2008 transcript until she gets a July 17, 2008 transcript. (Pl. 3, pp. 2-3.) In a 10/29/08 reply, Ms. Misra writes:

22

> Until submitting her Opposition, Plaintiff
> never stated that she needed to review "the
> July 17, 2008 depositions of HIP witnesses in
> order to correct her own transcript..."

(Def. 3, p. 6.)  Ms. Misra is correct that HIP is under no

obligation to give Plaintiff a copy of transcripts of depositions

whose testimony HIP does not intend to use.  If Plaintiff wants

transcripts of such witnesses, she must arrange to purchase them

from the reporting company.  In any event, Plaintiff has shown no

good reason for delaying signing the transcript of her own

testimony, with any errata sheet.  She has exceeded the 30 days

allowed by Rule 30(e), but **I will give her until April 22, 2009**

**to serve a signed transcript, with any errata sheet.  If she does**

**not meet that deadline, the transcript will be deemed to be**

**accurate.**

At Pl. 3, p. 2, Plaintiff states:

> Plaintiff's Response to C. Plaintiff's
> Failure to Respond to HIP's Interrogatories
> [the section of HIP's 10/17 motion]
>
> This section contains several misstated
> statements that even derived from a
> deposition transcript that is in dispute.
> With reference to Item C page 6 ¶ 1 of
> defendant's motion, is incorrect.  Based on
> defendant['s] overwhelming misrepresentations
> and misstatements that persist throughout
> this event, I was left with no other
> alternative but to record the minutes of the
> conferences.  I humble ask Your Honor to
> grant me the opportunity to use these records
> as proof.

I do not have the faintest idea what "conferences" or "minutes"

she is talking about or what she means by "use these records as
proof." Later, she writes:

> Currently I am awaiting a final recourse from
> TSG to provide me with the audio piece of the
> dictation equipment. If this audio assistance
> is not available to me, I respectfully ask
> Your Honor's guidance in this matter, for the
> discrepancies are numerous beyond repair.

My "guidance" is that she must obey Rule 30(d) and my deadline of

April 20, 2009. I do not know what she means by "audio piece of

dictation equipment," but even if there happens to be some audio

recording of the testimony, that does not relieve her of her

responsibility to deal with the written transcript.

I hereby direct Plaintiff to do following, if she has not

already done so:

(1) Plaintiff must serve her signed deposition
transcript, with any errata sheets, by April 22, 2009;
if there are any changes in form or substance, she must
separately state the reason for each such change.

(2) Plaintiff must search for all documents
responsive to HIP's document requests, including those
stored in email accounts and in storage facilities, and
produce those documents by April 30, 2009.

(3) If Plaintiff cannot locate documents that
were previously in her possession, then she must
provide, by April 30, 2009, a statement which (a)
describes those documents, (b) explains the last known
location of the documents, and (c) describe the current
custodian of the documents.

(4) Plaintiff must provide written responses
to HIP's interrogatories by April 30, 2009.

I further direct that all discovery will close on May 29,

24

2009. Any dispositive motion must be served and filed by June

17, 2009.

*Douglas F. Eaton*

DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated:    New York, New York
          April 15, 2009

Copies of this Memorandum and Order are being sent by mail to:

Ms. Maureen Wright Jackson
590 Flatbush Ave., # 8N
Brooklyn, NY 11225

Seema A. Misra, Esq.
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038-4982

Pro Se Office